## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| Mejor Vida, LLC, a Nevada limited liability company, Marc Morton as TR for the Alex Morton Irrev. Spendthrift TR DTD June 19, 2018, and Richard Lindman and Stacy Spencer, individually and on behalf of the Provident Trust Group, LLC FBO: Richard Peter Lindman Traditional IRA, | Case No.  6:24-cv-00319 <br><br> Judge: <br><br> **COMPLAINT FOR FRAUD AND VIOLATIONS OF THE TEXAS SECURITIES ACT** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| vs. | |
| KIMBERLY D. BUTLER, Individually, PROSPERITY THINKERS, LLC, PARTNERS FOR PROSPERITY, LLC, and PROSPERITY ECONOMICS PARTNERS, LLC; | |
| Defendants. | |

Mejor Vida, LLC, a Nevada limited liability Company, Marc Morton as TR for the Alex Morton Irrev. Spendthrift TR DTD June 19, 2018 ("Morton"), and Richard Lindman and Stacy Spencer individually and on behalf of the Provident Trust Group, LLC FBO: Richard Peter Lindman Traditional IRA (collectively "Plaintiffs"), by and through Plaintiffs' undersigned attorneys, bring this complaint against Kimberly D. Butler ("Butler"), individually, and Prosperity Thinkers, LLC ("Prosperity Thinkers") as successor entities of Butler's previous ventures Partners for Prosperity, LLC, ("P4P") and Prosperity Economic Partners, LLC, ("PEP") , (collectively, "Defendants" or "Butler and her Companies") and allege the following based upon Plaintiffs' personal knowledge, and information and belief as to all other matters, based upon, among other things, a review of public documents, such as United States Securities and Exchange Commission

1

("SEC" or "Commission") filings, Texas State Securities Board ("TSSB") filings, press releases regarding reports and advisories about Resolute and Homebound, and information readily available on the Internet. Plaintiffs believe that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This action is on behalf of Plaintiffs who purchased interests in the "Equity Funds" and "Debt Funds" offered by Resolute Capital Partners LTD., LLC ("Resolute"), Homebound Resources, LLC ("Homebound"), Homebound Financial Group, LP ("Homebound Financial"), Legacy Energy, LLC ("Legacy"), Choice Energy Holdings, LLC ("Choice Energy"), Advantage Capital Holdings – I, LLC ("Advantage Capital") and PetroRock Mineral Holdings, LLC ("PetroRock"), (collectively referred to as "Homebound and Resolute") after solicited by Defendants as related salesperson(s) .

2.      The Equity and Debt Funds solicited by Defendants as salesperson(s) or promoter(s) during the relevant period are securities within the meaning of the Texas Securities Act ("TSA"). Under the TSA, the term "security" includes, but is not limited to, any note, evidence of indebtedness, or investment contract. A promissory note is considered a security as evidence of indebtedness. *See U.S. v. Jones*, 450 F.2d 523, 525 (5th Cir. 1971) (finding "[t]he term "evidence of indebtedness" embraces only such documents as promissory notes which on their face establish a primary obligation to pay the holders thereof a sum of money"). An investment contract is a security if "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *See SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). Investors, such as Plaintiffs, invested substantial amounts into Homebound and Resolute's Equity Funds investment vehicles, organized as LLC's, with the expectation they would receive monetary

2

distributions from oil and gas wells prospected by Homebound and Resolute ("Equity Funds"). In addition, investors in Resolute, Homebound and PetroRock's Real Estate and Debt Funds invested and were sold promissory notes guaranteeing fixed returns ranging from 6% to 12% ("Debt Funds").

3.     Plaintiffs seek to recover damages caused by the Defendants' fraud perpetrated through material misstatements and omissions of material facts.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over the Defendants in the Eastern District of Texas for several reasons. First, at all relevant times, the operative events and fraud originated in Texas because of Defendants' scheme to solicit and sell Homebound and Resolute's unregistered securities and defraud Plaintiffs was orchestrated and perpetrated from Defendants' residence and or place of business in this District.

5.     Defendant Kimberly D. Butler resides in Mt. Enterprise, Texas. From her place of business in this District, Defendant Butler managed and controlled Defendants and together operated as unlicensed brokers soliciting and selling the securities at issue and assisting Homebound and Resolute in the sale of unregistered securities to Plaintiffs.

6.     Subject matter jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy substantially exceeds $75,000.

7.     This Court has supplemental jurisdiction over all claims pursuant to 28 U.S.C. § 1367 because the other claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

3

8.     Venue is proper in this District as Defendants conduct business and have their principal places of business and/or reside in this District.

9.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, seminars, dinners, and podcasts/radio broadcasts.

## PARTIES

### A. Plaintiffs

10.     Plaintiff Mejor Vida, LLC ("Mejor Vida") has its principal place of business in San Diego, CA and was solicited to buy fraudulent securities by Defendants in the SEA VIII fund, ultimately investing $1,000,000. Mejor Vida made its investment based on the representations made to its control person, Ivan Tapia, by and through Butler and her Companies in July 2020.

11.     Plaintiff Morton is a resident of Henderson, NV and was sold fraudulent securities by Defendants in the SEA VIII fund, ultimately investing $1,000,000. Plaintiff Morton made the investment based on the representations made to him by and through Butler and her Companies in June 2020.

12.     Plaintiffs Richard Lindman and Stacy Spencer are residents of Volcano, Hawaii and were sold fraudulent securities by Defendants in the SEA VIII fund, Advantage Capital Holdings-I, LLC, and Choice Energy Holdings III, ultimately investing $325,000. Plaintiffs Lindman and Spencer made the investment based on the representations made to them by and through Butler and her Companies in December 2019 and October 2020.

### B. Defendants

4

13.     Defendant Kimberly D. Butler is an individual domiciled in Mt. Enterprise, Texas. During the relevant period, while she was promoting Resolute securities, Butler's license as an Investment Adviser Representative was revoked on September 9, 2022, by the Texas Securities Commissioner for selling securities in another, unrelated Ponzi scheme involving Woodbridge Wealth, LLC ("Woodbridge"). Butler has never been registered as a securities dealer with the Texas Securities Commissioner but solicited and sold unregistered Homebound and Resolute securities to Plaintiffs and Texas citizens. Butler is the founder and control person of Prosperity Economic Partners, LLC, and Prosperity Thinkers, LLC d/b/a Prosperity Economics Movement.

14.     Defendant Prosperity Economic Partners, LLC, is a Texas Limited Liability Company formed in June 2014 and was based in Mount Enterprise, Texas ("PEP"). In February 2021, PEP withdrew its registration as an investment adviser with the Commission and registered as an investment adviser in Illinois. In June 2021, it withdrew its registration from Illinois and is no longer registered as an adviser with the Commission or any state. From December 2008 to August 2019, Butler owned more than 50% of PEP, controlled it as one of its two principals (holding titles of President and Chief Compliance Officer), and made investment recommendations to its clients, including Plaintiffs. In August 2019, Butler resigned her positions at PEP and relinquished her ownership in it. During the relevant period, Prosperity was key to the solicitation and sale of Resolute, Homebound, and PetroRock investments to Plaintiffs during the relevant period.

15.     Partners for Prosperity, LLC ("P4P") was a Texas limited-liability company based in Mount Enterprise, Texas, formed in 2018. Butler owned and controlled P4P since its inception. She supervised Partners' staff, which consisted of three administrative employees. In 2021, Butler terminated P4P's registration as a corporate entity with the Texas Secretary of State.

5

16.     Prosperity Thinkers LLC ("Prosperity Thinkers") is a Texas limited-liability company based in Mount Enterprise, Texas, formed in July of 2021. Butler owns and controls Prosperity Thinkers and has since its inception. Upon information and belief, Butler operates Prosperity Thinkers substantially the same as P4P and PEP before it, soliciting investors to invest in unregistered securities or other similar products, offering wealth management or wealth building advice, materials, coaching, utilizing substantially the same staff and tools, and generating revenue in the same manner previously done by Butler. Butler and Prosperity Thinkers are the de facto successors in interest to PEP and P4P, having closed previous entity's and started this one to avoid liabilities, such as damages to Plaintiffs, and obligations, such as advertising her previous misconduct per SEC and TSSB orders.

## C.  Individuals and institutional entities involved

17.     Resolute Capital Partners LTD, LLC ("Resolute") is a private investment company registered in Nevada that maintains offices in Dallas, Texas, San Francisco, California, and Minneapolis, Minnesota. Resolute's principal place of business is in San Francisco, California. Resolute created multiple debt and equity investments in oil and gas well revenues identified by Homebound. Resolute, through its affiliates, also has ownership stakes in certain equity offerings. Resolute describes itself as a private equity firm that "gives smart investors access to beyond-Wall Street assets, such as oil and gas wells."

18.     Homebound Resources, LLC ("Homebound") is a Texas company registered in Texas, with its principal place of business in Irving, Texas. Homebound facilitates Resolute's investment offerings by identifying and purchasing oil and gas wells. Homebound is a subsidiary of Homebound Financial.

19.     Homebound Financial is a limited partnership with its principal place of business in Irving, Texas. Homebound Financial is the principal for Homebound Resources, LLC.

20.     Legacy Energy, LLC is a Delaware company with its principal place of business in Irving, Texas.

21.     Choice Energy Holdings, LLC is a Delaware company with its principal place of business in Irving, Texas.

22.     PetroRock Mineral Holdings, LLC is a Texas company, with its principal place of business in Irving, Texas. PetroRock's sole managing member is Homebound Financial.

23.     Minerva Resources, LLC is a Texas limited liability company with its principal place of business in Irving, Texas. On information and belief, the CEO of Resolute Toth held 100% of the voting units in Minerva through various entities.

24.     Thomas J. Powell is the owner of Resolute and other related entities such as Resolute Capital Advisors, LLC and Equity Fund LLC's. He was the owner and CEO of Resolute Capital Advisors, LLC, an SEC-registered investment adviser responsible for advising various Resolute and Homebound funds.

25.     Stefan T. Toth, is the founder, co-owner, Chairman and CEO of Homebound Financial. Toth also operates and controls its subsidiaries, including Homebound and PetroRock Mineral Holdings, LLC.

## FACTUAL BACKGROUND

26.     This action arises from Plaintiffs' purchases or otherwise having acquired equity securities in the form of membership interests in pooled investment vehicles ("Equity Funds"), and/or purchased debt securities in the form of promissory notes issued by Homebound and

7

Resolute or PetroRock via lending subsidiaries ("Debt Funds") solicited by the Defendants as the agents and promoters of the securities.

27.    Beginning in 2016 Homebound and Resolute, through its agents, promoters, and salespersons such as Butler and her Companies, sold more than $250 million worth of unregistered equity and debt securities to retail investors.

28.    The Equity Funds were pooled investment vehicles that sold membership interests in limited liability companies ("LLCs") to investors. These LLCs, controlled by Homebound and Resolute, then purchased a percentage working interest in oil and gas wells prospected by Homebound. The Equity funds in the form of LLC interests sold to Plaintiffs included: Strategic Energy Assets VIII, LLC ("SEA VIII").

29.    Butler, through her companies solicited Plaintiffs to buy these debt and equity securities with the promise of monetary distributions based on Homebound's efforts to identify, buy, and manage revenues derived from oil and gas wells. Collectively, Butler and her companies helped raise over $60 million from investors in these Equity Funds from 2018 through 2021.

30.    Plaintiffs collectively invested over two million dollars ($2,000,000) in these Equity Funds only to receive dismal returns despite promises to the contrary.

31.    From 2018 through 2021, Butler and her companies also solicited debt securities to Plaintiffs in the form of promissory notes, which promised fixed returns ranging from 6% to 12% per year. These debt offerings were issued in the form of Loan Agreements or Promissory Notes by lending subsidiaries wholly owned and controlled by Resolute and/or PetroRock.

32.    Such debt offerings included Resolute Commercial Capital, Choice Energy III and Advantage Capital Holdings – I, LLC. Collectively, Homebound and Resolute, and their affiliates raised over $192 million from these debt offerings.

33.     Funds raised by Homebound and Resolute and their subsidiaries through the issuance of promissory notes were then loaned to PetroRock to finance the acquisition of other oil and gas leases, business ventures and investments, and in certain situations, pay other debts incurred by PetroRock. Each of the notes connected to the Loan Agreements agreed to provide investors, such as Plaintiffs, with a perfected security interest in the assets of PetroRock.

34.     Homebound and Resolute utilized promoters and other "sales agents" such as Butler and her Companies, unregistered individuals or entities, to solicit, advertise, and sell their Equity and Debt funds to retail investors (*i.e.*, Plaintiffs). Butler and her Companies participated in and made material untrue statements or omissions in the solicitation and sale of Equity and Debt funds to Plaintiffs.

35.     Through Butler and her Companies, Plaintiffs as retail investors were then introduced to Resolute, Homebound, and PetroRock's products and convinced to invest their retirement funds or life's savings by either purchasing membership interests in LLC's controlled by Resolute and Homebound or extend a loan to finance companies owned by PetroRock.

36.     Butler and her Companies participated in the solicitation and sale to Plaintiffs to invest their retirement or life's savings by either purchasing membership interests in LLC's controlled by Issuers or extending a loan to finance companies owned by PetroRock. Plaintiffs entrusted over $2,000,000 at the direction of Defendants only to receive dismal returns.

37.     Resolute and Homebound's offerings, and/or use of unregistered salespersons, has already subjected them to regulatory action by the Securities Exchange Commission ("SEC") (Order No. 2021-193, September 24, 2021), and other state regulatory agencies, such as the State of Washington Department of Financial Institutions Securities Division (Order No. S-19-2672-20-SC03, May 7, 2021).

38.     On May 7, 2021, the State of Washington's Department of Financial Institutions Securities Division entered a consent order ("Consent Order") because of a settlement with the Homebound and Resolute.[1] The Consent Order found that they violated Washington's Securities and Investments statutes by offering/selling unregistered securities, using unregistered securities brokers and salespersons, and making or omitting statements of material fact that were necessary to refrain from misleading investors. Pursuant to the Consent Order, they were found jointly and severally liable and were ordered to pay fines of $200,000.00, and $63,525.00. This was the first public notice that Homebound and Resolute were selling unregistered securities.

39.     On September 24, 2021, the SEC issued a Cease-and-Desist Order (the "Order") making findings and imposing remedial sanctions.[2] The Order named Resolute, Homebound, and its control persons as Respondents alleging violations of Securities Act Sections 5(a), 5(c), 17(a)(2) and (3), and 15(a). The Order imposed sanctions, including a suspension from involvement in any unregistered securities offering for two (2) years, posting a link to the SEC's Order on a prominent area of websites under Resolute and Homebound's control, engage a consultant to review Resolute and Homebound's undertakings, and the payment of monetary penalties. This was the first public notice that Resolute and Homebound sold securities unregistered with the SEC through affiliated promoters or salespersons such as Butler and her Companies and made material misstatements and omitted material facts in offering their equity and debt securities.

40.     On or about August 2021, and in between the Washington Department of Securities Consent Order and the SEC's Cease-and-Desist Order, Resolute Energy Capital ("Resolute Energy") took over and assumed the management of PetroRock's assets when PetroRock failed to

---

[1]  https://dfi.wa.gov/documents/securities-orders/S-19-2672-20-CO02.pdf, last visited July 23, 2024.
[2] https://www.sec.gov/files/litigation/admin/2021/33-10987.pdf, last visited July 23, 2024.

honor guarantees made to investors. On August 2, 2021, Investors with PetroRock's Debt Funds were first informed that PetroRock defaulted on their loans with such Funds through a notice sent by Resolute Management Services.

41.     PetroRock's failure to pay its debt owed to their lending subsidiaries caused a stop in investors' interest payments. In response, Resolute, on behalf of PetroRock, initiated a court supervised wind up against affiliated entities. Unfortunately, many investors are realizing the significant losses they have incurred by having entrusted their retirement funds, at the direction of the Butler and her Companies, to a Ponzi Scheme. The Plaintiffs' futures are uncertain due to the Defendants' material omissions and lies resulting in the draining of Plaintiffs' retirement funds and life savings.

42.     **Plaintiffs could not have known that they were defrauded by Defendants until September 24, 2021**, when the SEC Cease-and-Desist Order was entered against Resolute, Homebound, and their senior control persons Powell, and Toth. The SEC's September 24, 2021, Cease-and-Desist Order was the first public notice that investors with Resolute and Homebound may have fallen victim to fraud. The SEC Cease-and-Desist Order undertook to put as many investors as possible on notice of the fraudulent activities by requiring Resolute and Homebound "post a clearly referenced link to the Order in a prominent area of the home page of all RCP and Homebound web sites, and all other commercial web sites under [their] direction or control."

43.     Up until August of 2021, investors with Resolute and Homebound continued to receive disheartening returns from their investments in Resolute's Equity funds and Homebound's debt funds. But no fraudulent activity was suspected or evident to Plaintiffs. Even when interest payments from investments with PetroRock ceased due to the company's default, Plaintiffs had no guarantees that they had fallen victim to fraud. In fact, communications received from Resolute

11

following PetroRock's default reassured investors that, "[i]nterest payments are accruing for all Compounded, Simple, and Amortized loans". It was not until the Order entered by the SEC on September 24, 2021, that any investors, including Plaintiffs, would have been on notice that they were involved in a scheme contaminated with fraud and material omissions.

44.     At all material times, Butler and her Companies participated in the solicitation and sale of the securities at issue and were the trusted advisors of Plaintiffs. Plaintiffs had trust and confidence in Butler and her Companies to act in Plaintiffs' best interest and accepted that trust and confidence from Plaintiffs.

## SUBSTANTIVE ALLEGATIONS

### A.  Defendants' benefits and continuity in solicitation of investors, such as Plaintiffs.

45.     From approximately 2017 through approximately March 2021, Butler through the corporate Defendants solicited investors to purchase securities issued by Resolute and/or Homebound. Butler solicited investors through the Companies she controlled, PEP and P4P. The issuer, Resolute and/or Homebound, paid Butler and/or her Companies compensation including commissions based on a percentage of the purchase price that investors she solicited paid to acquire the securities. Butler and Defendant's combined compensation from these issuers totaled at least $2,872,643.40. Throughout the solicitation period, PEP was an investment adviser registered with the Commission. Butler and her Companies acted as unregistered brokers in these transactions.

46.     Defendants made untrue and misleading statements when offering the investments. Butler and her Companies failed to disclose that the investments she offered were limited to companies that had agreed to compensate her based on a percentage of the price the investors paid to purchase the securities. Failing to disclose this compensation made Defendants' statements

12

about the investments misleading because a reasonable investor would consider her compensation as bearing on her objectivity and motivation for offering the securities.

47.     To recommend the investments, Butler and her Companies communicated with investors such as Plaintiffs in person, by phone, and email. Butler described the terms of the investments she offered and purported to tailor her investment recommendations to each investor's stated investment goals. The alternative investments sold, however, were limited to companies which agreed to compensate her based on a percentage of the purchase price her investors paid.

48.     For example, Plaintiffs received emails in September of 2019 regarding the securities at issue that contained brochures and other solicitation materials from Butler and her Companies employees, Joe Jacubetz and Theresa Sheridan, providing greater access to materials regarding the securities at issue.

49.     Resolute and/or Homebound compensated sales agents, including Butler and her Companies, to offer its investment opportunities directly to investors such as Plaintiffs to raise money to finance multiple oil-and-gas investment funds structured as LLCs and finance commercial real-estate projects by selling promissory notes.

50.     From March 2018 through September 2020, Defendants and their agents sold at least $6,102,000 in LLC units and promissory notes to at least 90 investors such as Plaintiffs.

51.     Defendants' sales for Resolute and/or Homebound took place from approximately March 2018 through August 2019 while Butler was associated with PEP and from September 2019 through March 2021 while she was associated with P4P. Butler initially received commissions of up to 10% from her sales, plus a variable percentage of her sales agents' sales. In 2018, Butler and/or Defendants were paid commissions totaling at least approximately $43,000.

52.     Defendant P4P listed as a Related Person (or business) on PEP's form ADV stating the two entities are under common control, share supervised persons and the same physical location. This continuation of the same business practices that resulted in Butler having to resign her positions at PEP and relinquish ownership are substantially the same practices that Butler and her agents continued at P4P as a Related Person of PEP.

53.     In 2019, Resolute and/or Homebound changed its compensation method from paying sales commissions to paying a referral fee of $2,500 for each investor Butler and/or Defendants referred plus later bonus compensation when she reached more than $1 million in referred money. In 2019 and 2020 combined, Resolute and/or Homebound paid Butler and/or Defendants at least approximately $685,000 under the revised compensation method.

54.     Pursuant to the Corrected Order Instituting Administrative and Cease-and-Desist Proceedings entered August 6, 2021 (the "Order")[3], Butler, PEP, and P4P were to:

        a.      Provide a copy of the Order with a cover letter in a form not unacceptable to the Commission staff to each investor who purchased securities since May 1, 2015, after solicitation by Defendants.[4]

        b.      Post a copy of this Order, by a link entitled "2021 SEC Order" or other method not unacceptable for the Commission staff on P4P/PEP's website.[5]

55.     Defendant Butler created Prosperity Thinkers in July 2021 to operate as the successor in interest to PEP and P4P, having common officers, directors, and employees, common ownership, utilizing the same client mailings list, principal place of business, staff, similar business

---

[3] https://www.sec.gov/files/litigation/admin/2021/33-10962.pdf, last visited August 1, 2024.
[4] Plaintiffs did not receive a copy of the Order.
[5] Plaintiffs were never able to view this Order through Defendants' previous website.

names and logos, having common business identities in the ordinary course of business, and continuing in substantially the same operations as PEP and P4P.

56. Plaintiffs still receive similar solicitations from Prosperity Thinkers to those solicitations by Butler through her previous entities, PEP and P4P.

57. Defendant Butler's creation of PEP, P4P, and now Prosperity Thinkers were corporate structures created and abused to perpetuate fraud against investors, such as Plaintiffs, to avoid liabilities and obligations such as those listed in the Order, and to continue the solicitation and sale of unregistered and/or fraudulent securities.

**B. Defendants owed and breached fiduciary duties to investors, including Plaintiffs.**

58. Butler and her Companies provided Plaintiffs with self-published materials such as "Confessions of a Recovering Financial Planner, Financial Planning has Failed" by Defendant Butler. This e-book is stamped as a product of "Partners4Prosperity" (P4P) and Prosperity Economics Movement ("PEM") which remains active today as a 501(c)3 organization. See Exhibit 1.

59. The e-book warns about getting financial advice from those who are not obligated to advise investors according to the investors' best interests, distinguishing investments advisors who must recommend securities under a suitability standard and advisors or planners that operate from a "fiduciary standard or platform" that are committed to their client's best interest. *Id*., p. 20.

60. Butler and her Companies state the public and potential investors "should also know that Partners for Prosperity ("P4P") operates from a fiduciary platform rather than from the "suitability" standard that governs brokerages and most large financial firms. As a Registered Investment Advisor, we are licensed to give financial advice in all 50 states and legally bound to ONLY recommend what is in the best interest for our clients." *Id*., p. 59.

61.    Defendants further state in the e-book that "Partners for Prosperity, LLC is a Registered Investment Advisor (RIA), which means that we operate from a fiduciary platform and are federally licensed to give financial and investment advice in all 50 states." *Id.*, p. 62.

62.    Plaintiffs provided Butler and her Companies with their Personal Financial Statements or similar information with the belief that Defendants would review and provide investment recommendations suitable to their needs.

63.    Plaintiffs completed and returned investment goals and/or suitability assessments at the direction of Defendants under the impression Defendants would review and provide investment recommendations suitable to their needs.

64.    Butler and her Companies held themselves out as the agents of Plaintiffs in communications and dealings with Resolute.

65.    Butler and her Companies advised Plaintiffs and recommended that they invest in Resolute and/or Homebound by assisting Plaintiffs in completing necessary paperwork to facilitate the investments such as opening and transferring money to new accounts to facilitate the investments.

66.    Butler and her Companies represented to Plaintiffs that they had conducted due diligence for the recommended investments including on-site visits regarding the investments in the Resolute and/or Homebound securities Plaintiffs invested in based on the advice and recommendation of Defendants.

67.    Defendants did not disclose that Butler had legal matters related to solicitation of securities having been charged by Washington State for securities fraud in March 2016 for selling life-settlement securities in unregistered, non-exempt transactions, and ordered her to cease and desist such violations in June 2016. It was also not disclosed to Plaintiffs that in November 2018,

the State of Michigan charged Butler for selling Woodbridge securities in unregistered, non-exempt transactions, ordering her to cease and desist such misconduct in March 2019.

68.     Plaintiffs would not have invested in Resolute and/or Homebound securities but for Defendants' recommendation, assistance, and reported due diligence or had they known about the Michigan or Washington state charges.

**C. Defendants omitted and misrepresented material facts regarding the equity and debt securities they sold to investors, including the Plaintiffs.**

69.     Butler and her Companies provided insufficiently supported projections of future oil production, made statements about tax benefits that were unavailable to Plaintiffs, overstated cash reserves, made incomplete disclosures regarding potential uses of investor funds, including the amount of funds that would be used for payments to prior debt and equity investors, held themselves out as SEC and/or FINRA registered with a fiduciary duty to Plaintiffs, and failed to disclose their financial benefit from the sale of the securities to Plaintiffs. Defendants knew or should have known that their statements and omissions were materially misleading.

70.     Defendants utilized materials in the sale of these offerings that claimed exemptions from registration pursuant to provisions of the Securities Act and Regulation D, but no exemptions from registration were applicable.

71.     Defendants failed to take reasonable steps to verify the accredited status of investors, including Plaintiffs when applicable under a claimed exemption in selling or offering the unregistered securities.

72.     Defendants directed Plaintiffs with traditional retirement accounts that did not allow investments in unregistered oil and gas offerings to move funds to self-directed individual retirement accounts, assisting Plaintiffs in opening and transferring their retirement funds so those accounts could then be used to purchase securities issued by Homebound and Resolute.

73.     Defendants were incentivized by transaction-based compensation in the form of commissions to Defendants for referring and selling Plaintiffs the Equity and Debt Funds, yet failed to disclose this information or provide materials that disclosed this information.

74.     The offering materials provided by Defendants created a materially misleading impression of Resolute and Homebound's operations. For example, to bolster credibility, the offering materials stated that the securities were being sold by SEC-registered and FINRA-member broker-dealers when in-fact, the primary sellers of the securities were unregistered brokers such as Defendants Butler and Prosperity.

75.     Offering materials Defendants provided to Plaintiffs for the Equity Funds did not adequately disclose the amount or percentage of investor funds that would be used for marketing expenses, commissions to salespeople, expenses and salaries of Homebound and Resolute employees and consultants, and payments to investors from prior offerings.

76.     Defendants further made statements about the potential tax benefits of these investments that were misleading to investors such as Plaintiffs because the documents Defendants provided, and Defendants conversation with Plaintiffs, did not disclose that the tax benefits were not available to all investors.

77.     Offering materials for the debt offerings also contained statements and omissions concerning the use of investor funds which created a materially misleading impression. The materials disclosed that issuers would lend funds to PetroRock and that PetroRock would use the funds to acquire oil and gas leases, fund its business operations and investments, and in certain cases make interest payments on PetroRock debt. These disclosures were materially misleading because investors were not told most assets raised would be used to make payments to investors in other Debt Funds.

78.     Defendants' claims on rates of return were materially misleading because Defendants failed to disclose that the purported returns were based on related-party and not market-based transactions and came primarily from other investor funds as opposed to successful operations, which they knew or should have known after conducting due diligence.

79.     Plaintiffs were provided incomplete and unsupported information in offering materials regarding oil well productions based on unfounded projections. According to the SEC's September 24, 2021, Order, the SEA VII offering materials included unsupported oil well production projections of 2,210 barrels per day. However, SEA VII was only producing 199 barrels per day and Defendants knew or should have known of this material misrepresentation. Defendants utilized this or similar information to solicit securities related to the SEA VIII fund to Plaintiffs.

80.     Based on the well's prior performance, Defendants knew, or should have known but for reckless disregard for the truth, of these low production numbers and that such projections were unsupported and incapable of being met. Defendants remained silent on the previous production numbers in providing or directing Plaintiffs to offering materials and continued providing investors with misleading projections.

81.     Defendants continuously touted Resolute's equity securities as a safe oil and gas investment. Specifically, it was projected the oil and gas investments would be profitable if the price of oil was anything above $20 per barrel. This unsupported projection of profitability at such a low price point was used to entice Plaintiffs to invest and described as being possible due to the success of other Homebound wells that were "proven" to be successful. Notwithstanding the fact that Homebound's "proven" wells were producing barrel numbers that were significantly less than what was described to investors, it was omitted that there was no practical basis to project profitability at prices as low as $20 per barrel. Defendants omitted that these projections were not

19

based on any engineering study, but instead, were based on false production numbers and projections never capable of being met.

82.     In addition to Resolute's equity securities being marketed as a highly profitable investment based on false production numbers, investors were further lured to invest due to the purported tax benefits available for oil and gas investments. Defendants touted Resolute's equity securities as a desirable investment for W-2 earners due to the investments guaranteed tax benefits. The apparent tax benefits associated with Resolute's oil and gas, equity securities were the primary reason many investors, including Plaintiffs, were attracted to invest in funds such as SEA VIII. In addition, according to the SEC's September 24, 2021, Order, Resolute distributed a document to its agents and unlicensed brokers, such as Defendants to provide in turn to investors entitled "Tax Benefits of U.S. Oil & Gas Investments", which reinforced the tax benefits associated with investments in oil and gas. Despite the constant circulation of materials boasting of apparent tax benefits, Defendants omitted that the benefits were not available to retirement account investors. Defendants' active involvement in handling investors' funds placed them on notice that numerous investors utilized retirement accounts to invest in Resolute's unregistered oil and gas offerings, even assisting investors such as Plaintiffs set up self-directed individual retirement accounts to facilitate investments in Homebound and Resolute securities. Regardless, Defendants chose to remain silent and allow the inapplicability of the tax benefits to retirement investors such as Plaintiffs to remain undisclosed.

83.     Defendants failed to disclose that Resolute was not using SEC-registered and FINRA-member broker-dealers to solicit their equity securities, such as themselves. The SEA disclosure package gave investors the false impression that Resolute and Homebound's equity

securities were only being solicited solely through SEC-registered and FINRA-member broker/dealers by stating in relevant part:

> The Company may enter into selling agreements with a broker/dealer(s) who is (are) registered with the SEC, Financial Industry Regulatory Authority, Inc., and/or other necessary state or other regulators to sell the LLC interests. Any such registered broker/dealer may be entitled to receive selling commissions ("Selling Commissions") up to 11.5% of the total purchase price of the LLC Interests which it sells. A broker/dealer may, in addition, charge a monthly servicing fee which is not anticipated to exceed .50% of the total LLC Interests which it sells.

84.    The SEA VIII private placement memorandum further provided a "Plan of Distribution" including the use of FINRA-member broker/dealers by stating in relevant part:

> In general, this Offering is expected to utilize unrelated, third-party broker-dealers ("Participating Dealers") in connection with an offering of Shares. As used in this offering memorandum, the term Participating Dealers includes the Managing Dealer, other broker-dealers who are members of the Financial Regulatory Authority, Inc. ("FINRA"), and those exempt from registration as a broker-dealer, including certain registered investment advisers affiliated with or duly registered with a broker-dealer.

85.    Despite these representations, Defendants failed to inform investors that they were actively engaging with Plaintiffs despite Butler and P4P being unlicensed by the SEC or FINRA to sell Resolute's equity securities, promote Resolute's equity offerings, and prompt investors to relinquish their retirement or life's savings to invest in SEAVIII or other investment vehicles. According to the SEC's Order entered on September 24, 2021, "the offering materials stated that the securities were being sold by SEC-registered and FINRA-member broker-dealers. In fact, the primary sellers of the securities were unregistered brokers." Despite not being licensed as a broker/dealer or investment adviser with the SEC or FINRA, Defendants P4P and Butler solicited Resolute and Homebound securities to investors, including to Plaintiffs. Together, these unlicensed Defendants are

21

responsible for more than $2,000,000.00 worth of Resolute equity securities sold to investor Plaintiffs.

86.     Multiple promoters, if licensed at all, had their licenses revoked and, in one case, were found to have sold unregistered securities in another massive Ponzi scheme. Defendant Butler had her license revoked as an investment adviser representative for selling over $5,000,000.00 worth of unregistered securities in Woodbridge Wealth, LLC through Defendant Prosperity. Not only has Butler never been registered as a securities broker, but the SEC also filed a complaint against Woodbridge for engaging in a massive Ponzi scheme, which raised over $1.2 billion. Butler, a registered investment adviser representative at the time, was found to have received over $300,000.00 in commissions from the sale of Woodbridge securities despite being unlicensed as a broker. Defendants received commissions in the same or similar fashion for their sale of Resolute and Homebound securities to Plaintiffs.

87.     Defendants' failure to adequately disclose the offering, sale, and soliciting scheme in their offering materials that the securities were not always being furnished by SEC-licensed and FINRA-member broker/dealers was a material omission.

88.     Defendants also omitted to state material facts that their equity securities were not exempt from registration. The claimed exemptions in the offering materials were based on erroneous claims of registration under Section 4(a)(2) of the Securities Act of 1933 as a private offering, and Rule 506(b) of Regulation D. The SEA VIII offering materials state:

> "The Shares are being offered in reliance upon an exemption from the registration provisions of the Securities Act and state securities laws applicable to only to the offers and sales to investors meeting the suitability requirements set forth in this memorandum. This offering is being conducted in reliance under Rule 506(b) of Regulation D promulgated under the Securities Act. As such, a failure to comply with Rule 506(b) requirements could result in the loss of the exemption from

registration. Since the offering is a non-public offering and the Shares are only being offered to accredited investors, certain information that would be required if the offering were not so limited has not been included in this offering Memorandum, including but not limited to, audited financial statements. Thus, prospective investors will not have this information available to review when deciding whether to invest in the shares."

89.     Despite offering and/or directing Plaintiffs to materials claiming exemption from registration, Defendants did not comply with the available exemption's requirements or ensure Resolute abided by the available exemption's requirements. Defendants offered these securities with total disregard for the exemptions conditions by offering through general solicitation and failing to verify the accredited status of investors, which resulted in the sale of more than $2,000,000 of unregistered securities to Plaintiffs. Defendants further endorsed and/or solicited Homebound and Resolute's securities in podcasts, phone calls, email memoranda, and other public means.

90.     Offering materials provided by or directed to Plaintiffs by Defendants for the debt offerings also contained statements and omissions concerning the use of investor funds which created a materially misleading impression. The materials disclosed that issuers would lend funds to PetroRock and that PetroRock would use the funds to acquire oil and gas leases, fund its business operations and investments, and in certain cases make interest payments on PetroRock debt. These disclosures were materially misleading because investors were not told most assets raised would be used to make payments to investors in other Debt Funds.

91.     Defendants solicited Plaintiffs' purchase of these debt offerings to capture Plaintiffs' investments in the secured business loans for Choice Energy III and Advantage Capital, LLC.

92.     According to such offering materials, the debt offerings primary purpose was to "finance the business of PetroRock" in connection with its oil and gas interests and repay other

debt. For example, the loan agreement between investors and Choice Energy Holdings – III, LLC stated:

> "It is anticipated that PetroRock will use the Project Loan to fund its business operations and investments relating to owning or holding (directly or indirectly) oil, gas, or other mineral royalties or leases, or fractional interests therein, or certificates of interest or participation in or investment contracts relative to such royalties, leases or fractional interests (collectively "Oil and Gas Interests"), and may include, without limitation, repayment of other debt, repayment of any other PetroRock debt, marketing fees, legal fees, future acquisition of assets, and cash reserves relating to its Oil and Gas Interests. Borrower will be accepting loans, for the same PetroRock business and investment purposes, from other lenders ("Other Lenders"), up to an estimated aggregate principal sum of $25,000,000.00 and not to exceed an aggregate principal sum of $27,500,000.00."

93.     The Defendants failed to disclose the true purpose of the debt offering and use of the funds raised from investors in their offering materials. Unbeknownst to investors, the Homebound parties were, in fact, not using investor's loans to "fund [PetroRock's] business operations and investments" relating to the Oil and Gas Interests. Instead, the Homebound parties engaged in a "related-party" transaction to close out other debt funds owned by the Homebound parties, which Defendants knew or should have known, but omitted from their sales pitch to Plaintiffs.

94.     At no time did the Defendants disclose to investors, such as Plaintiffs, that their invested funds were used to effectuate such a related-party transaction to pay back earlier investors with other investors' funds. According to the SEC's Order entered on September 24, 2021, "[t]he offering materials disclosed that the issuers would lend funds to PetroRock and that PetroRock would use the funds to acquire oil and gas leases, fund its business operations and investments, and, in certain offerings, make interest payments on other PetroRock debt. These disclosures were materially misleading because investors were not told that the majority of assets raised would be used to make payments to investors in other Debt Funds."

24

95.     Eventually, the poor performance of PetroRock's oil and gas ventures rendered them unable to maintain the scheme, and they began defaulting on their loans with Resolute. Debt investors, such as Plaintiffs and their investment in Choice Energy III, received dismal returns that did not compare to their initial capital contribution.

96.     Not only did Defendants fail to mention that the funds raised would be used to make payments to investors in other Debt and Equity Funds, but Defendants also failed to disclose Resolute and/or Homebound's scheme to divert investor funds for a series of conflict-ridden self-related transactions.

97.     In sum, investors, including Plaintiffs extended loans to LLC's, such as Choice Energy III, owned and operated by PetroRock. In exchange for extending such loans, Plaintiffs were provided promissory notes guaranteeing that the funds would be used to acquire oil and gas leases, fund PetroRock's business operations, and in certain situations, make interest payments on other debt. Defendants omitted that such funds would be used to repay other investors or, at the expense of Plaintiffs, used to directly benefit control persons of Resolute and Homebound and entities they controlled as well as the Defendants.

98.     Plaintiffs maintain these allegations of Defendants' misconduct with confidence that upon further discovery and investigation additional examples of misconduct will unfold.

## CAUSES OF ACTION

### A.  First Cause of Action: Common Law Fraud

99.     Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here. The elements of common law fraud in Texas are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation

recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.

100.    Defendants made representations to Plaintiffs that were material to their purchase of Debt and Equity securities discussed supra. Defendants also made material omissions that were material to induce Plaintiffs' purchase of the securities. Defendants' material omissions and representations were the primary reason Plaintiffs made investments in the Homebound and Resolute fraudulent schemes, such as:

    a.  Reporting Defendants had done due diligence on the investments;

    b.  The use of unsupported oil well production projections;

    c.  Statements about the tax benefits that would be available to Plaintiffs;

    d.  Overstating cash reserves and/or collateral securing Plaintiffs' investments;

    e.  Omitting that invested funds would be used for payments to prior investors;

    f.  Statements/omissions regarding the registration of the securities Plaintiffs invested in;

    g.  Statements/omissions regarding Defendants failure to verify Plaintiffs' accredited investor status or otherwise determine their investment objectives and provide suitable investments or explain the non-suitability of the securities at issue;

    h.  Directly controlling, by filling out paperwork to create or transfer Plaintiffs' funds into self-directed IRA or trust accounts to then transfer funds to Resolute and/or Homebound

    i.  Statements/omissions regarding Defendants' conflicts of interest due to commissions or other monetary interest related to the sale of the securities at issue;

      j.    Statements that led reasonable investors such as Plaintiffs to believe Defendants were operating from a fiduciary platform and were the fiduciary agents of Plaintiffs;

      k.    Statements and omission regarding the use of SEC and/or FINRA registered salespersons to sell the securities at issue.

101.    Defendants knew, or should have known, these representations and omissions were false and/or made recklessly at the time Defendants were making the representations or providing and/or directing Plaintiffs materials to solicit their investments.

102.    Defendants' solicitation had the intended effect of enticing Plaintiffs to invest in the Homebound and Resolute securities so that Defendants would receive their commissions.

103.    Plaintiffs trusted and relied on Defendants in their decision to make the investments in Homebound and Resolute's securities and would not have made the investments but for Defendants' solicitation.

104.    Plaintiffs suffered damages as result of their investment in Homebound and Resolute securities and Defendants' omissions and misrepresentations are the proximate cause of Plaintiffs' damages.

## B. Second Cause of Action: Statutory Fraud under Tex. Gov't Code § 27.01

105.    Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

106.    This cause of action is brought pursuant to Tex. Gov't Code § 27.01 on behalf of Plaintiffs and against Defendants based on material omissions and representations Defendants made in connection with the solicitation and sale of equity and debt securities solicited and sold to Plaintiffs.

107.    Defendants' material misrepresentations and omissions were intended to solicit and/or sell Plaintiffs an interest in SEA VIII, LLC, a joint-stock company.

108.    Defendants made statements of false material facts to Plaintiffs for the purpose of inducing Plaintiffs to sign agreements investing in the SEA VIII LLC, which Plaintiffs received in return an interest in the SEA VIII LLC.

109.    Plaintiffs relied on the Defendants' statements and assurances made during solicitation of Plaintiffs in making their investments.

110.    Defendants were aware of the falsity of their statements and or material omissions and failed any point to disclose these falsities to Plaintiffs in order to receive benefits in the form of commissions or other compensation for their solicitation and/or sales to Plaintiffs.

**C.  Third Cause of Action: Offeror or Seller Liability: Untruth or Omission Under Tex. Gov't Code §4008.052(a)**

111.    Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

112.    This cause of action is brought pursuant to Tex. Gov't Code § 4008.052(a), on behalf of the Plaintiffs against Defendants based on omissions that Defendants made in connection with the solicitation and sale of equity and debt securities to Plaintiffs.

113.    A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding whether to purchase a security because it would significantly alter the total mix of information made available. A reasonable investor would consider information regarding the support and accuracy of enticing profitability projections, inapplicability of promoted tax benefits to retirement investors, an oil and gas investment's true production numbers, SEC and FINRA registration status of Defendants, the compensation to the seller, and registration status of securities offered to be important in their decision to trust and invest with the Defendants. Further, a reasonable investor would consider information regarding how their investment funds are being allocated and availability of cash reserves to ensure the repayment of their capital contribution to be important in their decision to trust and invest with the Defendants.

28

114.    Defendants omitted material facts concerning the lack of support behind the projected profitability of oil and gas investments, inapplicability of tax benefits available to retirement account investors, true productions numbers of oil and gas wells, the use of SEC-registered and FINRA-member broker/dealers, and the true status of the equity securities' exemptions from registration. Defendants omitted material facts concerning the purpose and use of investors' funds, including the diversion of funds to repay older investors and facilitate related-transactions and availability of cash reserves as advertised in their offering materials.

115.    Plaintiffs purchased the equity and debt securities at the direction and due to the solicitation of Defendants. Plaintiffs are within the statute of limitations pursuant to Tex. Gov't Code §4008.062(b) because it has been less than three years since the Plaintiffs could have been on notice of the Defendants' material omissions. Plaintiffs were on notice of, or could have discovered such omissions, when the SEC entered an Order against Resolute, Homebound, Powell, and Toth on September 24, 2021.

116.    The material misrepresentations and omissions made by the Defendants have directly and proximately caused Plaintiffs to suffer serious economic loss. Plaintiffs have lost substantial amounts in retirement and/or life's savings leaving their financial future uncertain.

**D. Fourth Cause of Action: Aider Liability Under Tex. Gov't. Code §4008.055(c)**

117.    Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

118.    This cause of action is brought pursuant to Tex. Gov't Code §4008.055(c) on behalf of Plaintiffs against Defendants based on their reckless disregard for the truth in aiding Resolute and Homebound with the sale of their Equity and Debt Funds.

119.    Defendants aided Resolute and Homebound during the relevant period by explaining their investment strategy to investors, recklessly boasting of the profitability of

Resolute's oil and gas wells, tax benefits for investors, referring investors to purchase Resolute and Homebound securities, and generally advertising their oil and gas securities through various means, such as podcasts, emails, and investor phone calls.

120.    But for the promotion advertisement, and material omissions/representations by Defendants, Resolute and Homebound would have been unable to continue their fraudulent scheme of selling securities to investors such as Plaintiffs.

121.    Therefore, Defendants Butler and Prosperity are jointly and severally liable for violations of Tex. Gov't Code §4008.052 to the same extent as Resolute and Homebound.

**E.  Fifth Cause of Action: Breach of Fiduciary Duties**

122.    Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

123.    The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty, (2) breach of duty, (3) causation, and (4) damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

124.    Butler and Defendants, at all relevant times, advertised and represented they were a "fiduciary platform" operating from a "fiduciary standard" and this meant they were "legally bound to ONLY recommend what is in the best interest" of their clients.

125.    Defendants advertised and represented they were experts in "alternative investments" such as the Resolute and/or Homebound investment and did solicit and refer investors to these unregistered securities under the pretense of operating from a fiduciary standard and/or platform.

126.    Defendants advised Plaintiffs on investments, assisted Plaintiffs in completing necessary paperwork to facilitate the investments, and reported to have gone on-site to do due

diligence regarding the investments in the Resolute and/or Homebound securities Plaintiffs invested in on the advice and recommendation of Defendants.

127.   Defendants' representations created and maintained a de facto informal, confidential relationship, between Plaintiffs and Defendants.

128.   Plaintiffs would not have invested in Resolute and/or Homebound securities but for Defendants' recommendation, assistance, and reported due diligence.

129.   Plaintiffs lost millions of dollars because of Defendants abusing their de facto fiduciary position in soliciting and causing Plaintiffs to invest in the Resolute and/or Homebound securities.

## JURY TRIAL DEMANDED

130.   Plaintiffs hereby request and demand a jury trial for each and every cause of action permitting trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs demand judgment as follows:

131.   Requiring Defendants to pay compensatory damages jointly and severally in favor of the Plaintiffs for all damages sustained by reason of the acts and transactions alleged herein;

132.   Awarding Plaintiffs recission, disgorgement, exemplary damages, and all other remedies in equity or in law;

133.   Awarding Plaintiffs prejudgment and post-judgment interests, as well as their reasonable attorneys' fees with interest, expert fees, and other costs; and

134.   Awarding such further relief as the Court deems just and proper.

DATED: August 29, 2024                    Respectfully Submitted,

*/s/ William B. Federman*
William B. Federman, TBA #00794935
FEDERMAN & SHERWOOD
212 W. Spring Valley Road,
Richardson, TX 75081
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: wbf@federmanlaw.com

Gary S. Menzer*
MENZER & HILL, P.A.
7280 W. Palmetto Pk. Rd. Ste 301-N
Boca Raton, FL 33433
Telephone: (561) 327-7207
Facsimile: (561) 880-8449
gmenzer@menzerhill.com
*Pro hac vice application forthcoming
**ATTORNEYS FOR PLAINTIFFS**

**An attorney's lien is claimed in this matter.**